Maybe it's us. In any event, the next matter for argument is Judon v. Travelers Property Casualty Company of America. Mr. Kernan. Thank you. May it please the Court, my name is Joseph Kernan. I represent the Appellant Travelers. I'd like to reserve five minutes for rebuttal. Granted. Thank you. Members of the panel, seven years ago in the Federico v. Home Depot case, this Court outlined a test for CAFA removal disputes that applies squarely to this case. Both Federico and here, we have number one, the plaintiff did not contest the relevant jurisdictional facts. Number two, the defendant's argument for CAFA jurisdiction was based on the allegations in the complaint, reasonable inferences from those allegations, and the applicable law. In those circumstances, what the lower court should have done is applied the Federico legal certainty test, which is phrased as follows. The case should be remanded only if it appears to legal certainty that the plaintiff cannot recover $5 million to the CAFA jurisdictional amount, and also that the challenger to jurisdiction must make that showing. But counsel, isn't what's alleged in both the complaint and the notice to remand up to $25,000? So if we take the standard as we articulated it in both Federico and in Kaufman, we don't even reach the legal certainty standard until we either have factual findings or uncontested facts. And here, what's alleged is a range, anything, a delta, given the $5,000 to $25,000 of zero up to $20,000. Where you're saying we should take the maximum, and they say that it's substantially less than that, how can we proceed on the assumption that we have uncontested facts? What we're saying, Your Honor, is that we have a case here that's seeking two forms of relief. One is a reformation of the insurance contracts that would be applicable to hundreds, which we say very conservatively is 200. Although, frankly, I think hundreds means up to 1,900. Only then would the plaintiff say thousands, and we point to the dictionary definition, hundreds. So we think a fair reading of the damages sought against an insurance carrier, when you're attempting to reform over 200 policies to have available up to $20,000 each, that is the amount of risk that is at issue for this insurance carrier. Well, let's start with first things, which is the complaint. And as you indicate with respect to the numerosity issue here, the pleading itself explicitly refers to hundreds. Yes. And speaking only for myself, it's difficult to conceive semantically of any other construction that can be reached  Correct, Your Honor. But beyond that, I mean, we're talking about a CAFA case. We're talking about a class action. We're talking about the aggregation that is necessarily a part of a class action. And what has been pleaded here, in addition to the hundreds, is a legal requisite of insurance coverage that has allegedly not been met by the defendant. Yes. And also alleged is that we have a class representative who has been damaged for a specific amount. In this particular accident, correct. In this particular accident. But we have nothing more than that from the face of the complaint. How is the court doing anything other than speculating as to what that aggregated claim amounts to, even with troubled damages, where all we have is the specific allegation of how this class representative has been damaged in a particular amount?  Your Honor, what's necessary here is remembering that the defendant has not just the ability, but the obligation to attempt to remove within 30 days. If a reasonable and intelligent review of the factual allegations of the complaint indicate the jurisdictional amounts met, and although we state in our removal papers that $20,000 is the new risk they're trying to impose on the insurance carrier, we're eminently reasonable. That's the required coverage. That is not the amount of damage. Correct. That is not the amount of actual damages we would ever be able to say for sure. That's why we use such a reduced number. Forget for sure. Let's talk about some means of calculation or projection that has some basis in a record. What do we have in a record that is composed only of the complaint and the removal papers and your respective position set forth in the papers? We have inferences from the allegations of the record of even if you assumed only 42% of the potential recovery, it calculates to $8,500 per person. They asked for troubled damages. We believe that the lower court was wrong and that they ought to reconsider. Where did that figure come from? Excuse me? Where did that figure come from? That came from $8,500 would be 42% of $20,000. Where did 42% come from? Maybe I did it wrong, Your Honor, but I did the math. If each of the 200 class members recovered 100% of the new coverage, that would be $20,000. We did the math and said let's assume they only recover $8,500. Let's assume. Where does the assumption come from? Doesn't the assumption have to be grounded in some reasonable inference that can be drawn from this complaint? It needs to be a reasonable inference from the fact allegations. And the law is clear that you don't measure by the low end of the claim, which is what the plaintiff is suggesting. Why not? Couldn't we even argue that because this is a class action and because this is a class representative, the typicality requirement might suggest that all the claims should be within a reasonable range of the amount that she has sought here? Well, the third circuit in Cary v. Pennsylvania Enterprises tells us the amount in controversy not measured by the low end of an open-ended claim. This is an open-ended claim. And you can quibble that perhaps we shouldn't use $20,000, but we don't think $2,300 makes sense either. But, Mr. Curtin, isn't that exactly what we did in Federico? We looked at the representative plaintiff's actual damages and then did calculations from that of the multiple for punitives and adding 30 percent attorney's fees just to see if it went over the jurisdictional amount, using that as the baseline. Why wouldn't we follow that here to the extent that we need to ground this in something in the record? Because there is a much larger number in the record that's being sought by the named plaintiff on behalf of 200 other class members at least. And, frankly, we think it's many more than that if the definition of hundreds means what we think it means. But it's not up to that. And we asked you to be prepared today to talk about the Kauffman v. Liberty Mutual case. Yes. Because doesn't that suggest, although it was dealing with the face amount of a policy, that we don't look to the maximum benefits provided by a policy or, in this case, claimed under that policy, but to the actual damages that the particular insured would claim? In that particular case, there was an underlying case where Mr. Kauffman got sued for at least $2,500 by someone who was injured on his property. He then sued Liberty Mutual for insurance coverage, and he pled at least $3,000 as an issue because that was a jurisdictional amount. The policy limits were much higher than that. We don't know what it was. The court didn't say. In that particular case, the court held that the coverage limit in that case does not set the jurisdictional amount when the amount claimed by the victim is lower. And the court, quote, had not the faintest idea of the value of the underlying claim in that case. This case is different. In this particular case, this plaintiff is suing for the policy limits, but it's not a separate case where a plaintiff is suing, nothing to do with the insurance policy. In Kauffman, the insurance company raised the issue of the policy limit as an argument to try to obtain jurisdiction. It's not something that travelers raised. It was raised in the first instance by Judon, and what travelers did is rely only on the allegations of the complaint, pointed out that they're seeking up to $20,000, and they quickly did much, much more conservative math, so just to underscore that it cannot be said to a legal certainty that the claim at issue is not at least $5 million, and we use a much lower number. We still believe that it's appropriate in an insurance coverage case to use that larger number. It's not necessary here. Thirty years after Kauffman, a case called Manzi v. State Farm, where the court did agree that the full policy limit was the amount in controversy. It was an open-ended claim, like we have here, for UIM benefits up to $15,000. The plaintiff had never demanded less than $10,000. That was the jurisdictional limit, and the court said because the policy limit was $15,000, the case could result in damages more than $10,000, and therefore the jurisdictional amount is met. Mr. Kern, let me ask you a very practical question as opposed to a question about a case. Why didn't travelers, confronted by what appears to be in the first instance a statewide class action based on Pennsylvania law filed in Pennsylvania against travelers alleging hundreds, why didn't travelers go to its own records and try to make such a factual determination and come forward with that without even a need to resort to discovery? Within the very strict and non-extendable 30-day deadline that all defense litigators face and lose sleep over, travelers did take steps to try to determine the number of potential plaintiffs, and it quickly became obvious that it would have been impossible to complete that process anywhere within that 30-day period. You didn't consider asking for any kind of an extension? I have researched it lately, Your Honor, but it's my understanding that that's the firmest deadline there is. I think it is. And I've been trained since I was a young associate not to miss that, and it's the kind of thing that gets lawyers fired. So, you know, it was very obvious that wasn't able to be done, like can be done in some other cases, but we also realized we didn't think it was necessary in this case. It couldn't have been done before the removal. Correct. What about after the removal? It's not incumbent upon the defendant to do that. If you sit on your hands, you do so at your peril. Going all the way back to REDCAB, I mean, the status of the damages claims as disclosed in the complaint controls, if made in good faith. And a case that's removed. I just looked at the complaint again. I don't see them saying that each class member is entitled to $25,000. They use the phrase up to, which is somewhat indifferent. They seek declaratory relief. I didn't mean indifferent. It's indeterminate. We can't really know, as my colleagues have pointed out. They seek among the relief a declaration that for all members of the class, there be available up to $20,000. But if all the members of the class were injured the way that Judon was injured, then we're probably dealing with less than $5 million. With all due respect, it's not appropriate to assume the low end of the range, Your Honor. So why is it appropriate to assume the high end of the range? Why is it appropriate to assume any point on the range without further evidence, evidence that could have been adduced somehow? Because there's an obligation on the defendant to take a reasonable and intelligent view of the case, and that's exactly what Travelers attempted to do and has done. And that's why we quickly went downward from the $20,000 per, with our calculations in our submission to this Court and opposition to the motion to remand, saying, well, we can go all the way down to $8,500. We can go down to $7,500 if we include an attorney's fee, which we didn't include the first time around. And so we're trying to be very conservative by explaining even if it's 42% of the full recovery, 35% of the full recovery. But you never asked for discovery. Were there no proceedings with the trial judge other than the motions practiced in the Court's order? No proceedings with the trial judge. Okay. I think Judge Krauss has a question. Time's up, but we'll have this question. So if we were to conclude that it's also incumbent on the removing defendant to show by a preponderance that that dollar amount is net, and we were to remand, if you're not constrained by that 30 days that you referenced, would you be in a position then to put facts before the district court for the district court to make a determination as to the jurisdictional amount? If we were directed to do that, we would certainly, you know, continue the investigation and attempt to do that. We don't think the preponderance standard is appropriate here. The plaintiff did not dispute facts. What the plaintiff did here is very similar to what the plaintiff in Federico did. As this Court pointed out, Counsel Federico submitted a letter and said, we're leaving it to Home Depot. We'll leave it to Home Depot to explain the bases for jurisdiction. That's, in effect, what Judon is doing. They leave it to travelers. In fact, they direct travelers, you come up with evidence to dispute what we allege. And that doesn't create a disputed issue. In fact, if you look carefully, which I did again this morning, at the motion to remand and the letter that was submitted by Judon to this Court, they refer only to the jurisdictional facts of the complaint, inferences from those facts, and we think they're unreasonable and that ours are reasonable, and a dispute on the law between the two parties. It's not a disputed issue of fact under Federico. All right. We'll have you back on rebuttal, Mr. Kernan. Ms. Tye. Off the bat, we just want to set forth to the Court that this case is radically different than Federico. In Federico, although I've never been accused of being soft-spoken, so that should be okay. In Federico, the answer to the motion for removal neither agreed with nor disputed the facts set forth in the removal petition. Clearly, as the Court has referenced at this argument, in response to the removal, we filed a motion to remand. And at paragraphs 11, 12, 13, and 14, we disputed the facts relied on for removal. But some of that was in derogation of your own pleading. Well, Your Honor, not ñ You're really going to tell us hundreds is less than 200? No, Your Honor. I don't. But that's what you told the district court. Well, when you continue that argument on appeal, are you withdrawing that position? I think ñ Excuse me. Let me finish my question. Are you withdrawing your position as to hundreds and instead aiming solely at the question of the threshold amount? No, Your Honor. Your Honor, I believe that the issue with hundreds is that hundreds can be 150, can be 160. Really? Yes, Your Honor. This is the new math, I take it. I guess it's core math, Your Honor. 150 would be hundreds. It would be 1.5 hundreds. I apologize. And, Your Honor, let me ñ You know, that dog won't hunt. I really would suggest that you move to the threshold amount issue. And, Your Honor, I also want to point out that when you look at the complaint, the complaint at issue in this case is for a limited coverage. It's for first-party medical benefit coverage on policies issued to commercial carriers for vehicles having less than 16 seats, vans, buses with less than 16 seats. So what we're looking at in this action are insurance policies issued by travelers to common carriers providing coverage for vehicles with less than 16 seats. With those facts in mind, a class of 150 or 200 is not unreasonable. You are the master of your complaints. If you mean 150, you can plead 150. Oh, Your Honor, and we agree. We certainly ñ you know, we certainly ñ we don't feel that the 200 is dispositive. But what we do believe is dispositive is what's at issue, what is the claim. What does up to $25,000 mean? Up to $25,000, what that would ñ the complaint contains both a request for declaratory relief and also a request for payment of claims for the class representative, Francine Judon. And attached is Exhibit C are her outstanding medical expenses above and beyond the $5,000 that were paid. But in asking for up to $25,000 for all class members, haven't you, by your pleadings, put that delta of $20,000 in controversy? I mean, it may be that following discovery or trial that not all class members were entitled to that much. But isn't the ñ isn't there some uncertainty about recovery that's built into the concept of a mountain controversy? You pleaded the number up to $25,000. Why shouldn't we use that amount as ñ or the $20,000 delta as the amount that we're considering for jurisdictional purposes? And, Your Honor, the $25,000 is statutorily mandated. The Pennsylvania Motor Vehicle Financial Responsibility Law requires that common carriers with vehicles ñ I'm sorry ñ seats of less than 16 provide up to $25,000. Otherwise, you only have to provide $5,000. It doesn't require you to seek that in damages. No, Your Honor. And in fact ñ How are you? No, Your Honor. You're not. So how much are you seeking per plaintiff? Your Honor, in this case, what we are seeking for Francine Giudon is the 26 ñ So for the class. We know you're seeking for one person. We wouldn't be here if this wasn't a class action. What are you seeking for the class? Your Honor, as we stand here today, we don't know that amount. Well, and you don't have to, under Pennsylvania pleading requirements, plead that amount. No. But you agree it's less than $5 million. Yes, Your Honor. All right. So in state court, when you go back on your remand, you now are making a representation that the state courts can take cognizance of, that under no circumstances can your class recover more than $5 million, including actual damages, treble damages, and attorney's fees. Your Honor, I believe it would be unlikely that it would exceed the $5 million limit. That's not the question. Your Honor, I don't think we have that information available to us. And again, I can identify the paragraph. You know, for anybody who's been on the district court before, we've seen this occur from time to time. And pardon me, but there is a little bit of disingenuity involved on the part of counsel, often on both sides of these cases. Somebody wants the case one place and somebody wants it another. And all of a sudden, well, we don't really want that much money, Your Honor. We're not asking for that much. And then when the district judge tries to say, well, are you willing to stipulate, as Judge Hardiman essentially just did here, we say, well, now, wait a minute, it's unlikely. That is game playing that, frankly, is not terribly attractive from the standpoint of the perception it gives of how the courts operate. Now, either it is or it isn't. In fact, it might be easier for this panel to dispose of this case if we knew that your position was it just ain't going to meet $5 million, and I'm prepared to tell you that, Your Honor. Your Honor, I can certainly set forth a factual basis for why I believe it's unlikely that it will never reach that $5 million threshold. But you're not prepared to amend the complaint to include that. Your Honor, perhaps if we complete a discovery, we don't know the size of the class. But you also don't want to be in federal court, and you're not willing to stipulate to facts that would keep you out of federal court. Your Honor, my client filed, we filed our complaint in state court. We set forth allegations to a We know that. That's why we're here. I really, to follow up on Judge Smith's point, I'm really concerned about the practicalities of this. I mean, there's a lot of interesting law here. I suppose we could write a precedential opinion that maybe makes a little law. But all I've heard from you and opposing counsel with respect is uncertainty. And I don't understand why this case wasn't handled the way so many cases that Judge Smith and I were involved in. He certainly a lot more than I was. He's older than I am. A lot. But, you know, this is a binary thing. You come in, one side said it's worth more than $75,000. The other side says it's less. And the party that was desperate to go into state court would sign a simple remitted or form conceding that it was worth less than $75,000. There was certainty. There was predictability. I saw great virtue in that. And here I see a lack of virtue. I'm not saying, you know, counsel was behaving improperly, but this lack of certainty and clarity strikes me as a disservice to the system. And why shouldn't we just remand this case and urge the trial court to put you both to the test? Because, as Judge Smith pointed out, you know, you want the case to be worth less than $5 million to get into state court, but then once you're in the state court, if I were you, I'd try to get a $20 million verdict. And they're in the inverse position. Your Honor, certainly I believe on behalf of both sides we've been nothing but genuine with the court. I don't believe anyone is trying to hide the ball or trick anyone. Clearly as set forth in our papers and for the four months of this litigation, Travelers has been in the sole possession of the number of potential class members and the number of potential cases. But you yourself indicated that discovery would be necessary. It takes one into the merits of litigation. Doesn't that take us back to the concept of amount in controversy? How is it a workable rule for the future for class action cases if we are to say that by pleading up to a certain amount, even if it's up to $20 million in state court, that that insulates a plaintiff from removal because they've, by virtue of framing it that way, they've created a range and created uncertainty. And, Your Honor, the phrase up to is in the request for declaratory relief, the request seeking to say that pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law that requires $25,000 in first party medical benefits for common carriers. We request that up to $25,000 is in, I believe it's the wherefore clause B and C, where we're asking for declaratory relief. Where we seek payment of first party benefits, it requests the amount of first party benefits. And in our complaint, in paragraph 30, we set forth the amount of outstanding medical, first party medical benefits. We're not, I think this would be a very different situation if in our wherefore clause we requested up to $25,000 for each and every class member. What we've requested is, our relief is twofold. Number one, we need a declaration that the policy issued by travelers provides $25,000 pursuant to, up to $25,000 in first party medical benefits pursuant to the financial responsibility law. But it is up to $25,000 for each class member. That is what you're asking by this declaratory judgment action. Yes, Your Honor. But the compensatory relief, we seek the amount of the actual claims. And the case law referenced that, talks about actual claims. But since we're dealing with a request for a declaratory judgment, what's at issue is they either do or don't have exposure for $25,000, or whatever the actual damages may come in at. Why don't we use that? Isn't that a much more workable, clearer test to be administered in this case and future cases? Yes, Your Honor. We would believe that the language in Frederico would be controlling, where it indicates that the test to be used is the actual damages, not best case scenario. But there can't be actual damages after the case is over. I mean, the cases are legion in the personal injury area, in the diversity context, where the trial judge knows in his or her heart and mind that the person's likely to get about $20,000. But you keep federal jurisdiction. Why do you keep federal jurisdiction? Because punies are theoretically possible, treble damages are theoretically possible. So it can't be right, but it's certainty. Well, in those cases, I believe that there's probably a wherefore clause that requests damages in an amount in excess of the jurisdictional limit. Well, in here, I mean, if we multiply $200,000 by up to $25,000, then we get to $4 million. We get the difference is $20,000, as Judge Krause pointed out. So we're at $4 million already before we even talk about attorney's fees and treble damages. And, Your Honor, perhaps I misspoke. It's actual damages sought. We're seeking a declaration that the policy is often sought. Well, that's why I asked you that. I'm sorry to interrupt, but that's why I asked you that question before. Because if you state unequivocally that we are seeking less than $5 million for the class, then we don't need to stay here anymore, and we can wrap this up. And you're heading back to state court happy about it. And, Your Honor, while I understand that and I respect that, we don't have that information. And it's our position that it is the burden of the defendant. All right. Then why don't we send it back? You're right. We don't have it. We're in this cloud of – we're in this haze of uncertainty. Why don't we send it back and say, figure out how many people are in this community. You mean send it back to the district court. Correct. Correct. To do the following. Ascertain to the extent practicable how many people are in the putative class and what the potential damages are. Wouldn't that be the prudent thing to do? Your Honor, that's certainly the prudent thing to do. I leave that to the court. I would just posit that for now four months, we raised our objection some four months ago, arguing that the defendant's position at $20,000, that the total available excess first-party benefits coverage and the 200 people, we didn't think they had a solid foundation. And in those four months, the defendant, who is in complete control of all of this information, has by its own admission not moved forward to do that discovery and not move forward. Counsel said when he was up here, if he thought he had to do that, he would have moved forward. I'm not sure what prevented him from doing that previously, and I'm not sure why my client should be, you know, her access to a state court should be denied by their inactivity. Thank you. Thank you, Your Honor. Mr. Kernan, we'll have you back on rebuttal. Two of you mentioned uncertainty. Uncertainty is not a dirty word in the removal context. By its nature, jurisdictional facts are often equivocal and imprecise. Hundreds, thousands, serious personal injuries. All right, let me challenge you on that. So if a federal complaint is filed tomorrow that says, in this personal injury action where the parties are from disparate states, the plaintiff probably requests more than $75,000, and you're saying that federal jurisdiction exists there. If they went on to allege the serious personal injuries, and we were talking about a quadriplegic, if there are other things within the complaint that the defendant can reasonably No, the person's damages were, you know, $10,000. Their medicals were $10,000. But the complaint pleads, seeks punitives and trouble damages. But it doesn't say there's more than $75,000. It says probably or possibly. You think that's enough? Whether or not they say more than $75,000, not dispositive would not be enough. And all they say in common police court, as we all know, is more than the arbitration amount. And what you need to look to is the other allegations of the complaint to decide whether, under a reasonable and intelligent review of the allegations, it's more than $75,000. In the class action context, where they're seeking to reform hundreds of insurance policies, the amount of controversy, and, Judge Krauss, you're exactly right. This is an insurance company, Hilly v. Massachusetts Mutual, Eastern District of Pennsylvania, where the validity of an insurance contract is at issue. The full value of the contract, including any future payments that may possibly become payable to the insured, may be taken into account in computing the amount of controversy. Make no mistake. They're asking in their wherefore clause for a declaration that the policy of this insurance issued by Troutters to members of the class required to provide $75,000. Just like the plaintiff in Jumara v. State Farm, 3rd Circuit, 1995, given that Jumara's alleged entitlement to as much as $200,000 in underinsured benefits. But those aren't CAFA cases. That's not a CAFA case. It's an individual case. But the point is we're looking at what the number is that each plaintiff is alleging. And when you're asking an insurance carrier to be on the hook for up to a certain amount of money, what are they now at risk for? What is their risk? What are they going to consider themselves to be at risk? The plaintiff here is asking that the court declare that this company is at risk. So do you value the risk? Diversity jurisdiction includes a threshold. The threshold is a simple dollar figure per act of Congress. So when you're talking about risk, don't you have to put a figure on it? You have to put a, well, what you have to do and what the Jumara court asks whether you can say to the legal certainty whether the total risk aggregated is more or less than $5 million. No, no. I'm not talking about exposure. I'm not talking about the limit of a policy. I'm talking basic economics. If all you're talking about is risk, how do you value it? By placing a dollar figure on it. All right. What is it? Up to $20,000 per class. Let's assume one-third of that. And that's what we're trying to do. In order to keep us away from the fringes, we're assuming that these class members We can't even get into the fringes because we're in the clouds. Why not send it back? Same question that I asked your adversary. Because we ought not. There's more work to be done here, and it's pretty simple. You go back. You look at your computer system, how many vehicles fit the profile that Ms. discovery to the trial judge. Then the trial judge can make a more certain determination. Or as far as I can tell from reading this record, the trial judge punished you for not doing your work. But why shouldn't we send it back and make you do your work? That way we know exactly whether you should be in federal or state court. We think the law in this district, in this circuit, is clear that when the well-pled allegations in the complaint indicate to a reasonable and intelligent review by the defendant. And what if you're wrong on that? What if we disagree? Well, that's what I think what this is about. Whether a reasonable and intelligent review of the allegations in the complaint inferences from them in the applicable law, we can say that aggregate up to $5 million. And it's not an answer, I don't think, with all due respect to suggest that the plaintiff stipulate that she is seeking less than that under the recent U.S. Supreme Court case standard fire. I don't think that she can do that on behalf of all the class members. Their complaint is very clear what they're seeking on behalf of all the class members. Let me go, Judge Harding, this question from another direction. Why shouldn't we just affirm? In McNutt, when the Supreme Court found that the party that was seeking jurisdiction, that had the burden to prove jurisdictional amount by a preponderance hadn't done so, it remanded with instructions to dismiss. What about this situation? Is there some lack of clarity in our law or some other justification you would put forward so that, if we don't agree with you on the merits, that we should be remanding for you to have what's, in effect, a second bite of the apple to put forward some kind of evidence to meet that burden? We think there is clarity in the law in the Federico case. We think that case is very well reasoned. We think it's this case. And marching through the different types of disputes and pointing out that Home Depot relied on the allegations of the complaint in its removal petition, just like Travelers, pointing out that the plaintiff has not submitted any new facts. They played their cards close to the vest, I think is what this Court said, and said, well, we'll allow the defendant to, you know, justify jurisdiction. Well, if I were reading your answer from a cold transcript, my reaction would be, well, no, Your Honor, we don't want a second bite of the apple. Right, right. So since you've used up all of your time, I suggest you either clarify my misapprehension or you can stand on that answer. If we're directed to take a second bite of the apple. You're not being directed. I'm asking you a question. I read your answer the same way Judge Smith did, which is, you know, we're going to argue the law until we're blue in the face here and we have no interest in showing our cards as to how many putative plaintiffs there are in this class and how they might be damaged. I mean, you're not admitting liability. I mean, by listing the Judons of the world and listing their putative claims as 2,500 or 1,100 or 12,000, in no way are you admitting liability. You're just admitting that there's a putative plaintiff out there with a putative claim and we know that you think that you're not liable. Why are you resisting that enterprise so much? Well. And your answer, I don't want to get into business practice. If you tell me we have important business reasons for not getting into that, that's fine. I'll respect that answer. Well, first, and since we have the Federico case, which we frankly believe is an interesting case. We know your legal point. We're pressing you on these non-legal, on these practical aspects of the case, which at least from my perspective could be more useful in resolving it rather than dealing with the legal aspects of the case. If we don't win under Federico and a reasonable abstention from that, then we'll take advantage of the plaintiff. All right. That answers the question. We've heard the arguments. We thank counsel for their arguments and we'll take the case under advisement. Thank you. Thank you.